UNITED STATES DISTRICT COURT FOR
THE DISTRICT COURT OF MASS.

05 11173 NG

_____

UNITED STATES OF AMERICA,

        Respondent,

v.

ANTONIO SANTIAGO,

        Petitioner,

_____

Crim. No.1:00cr10029-NG

Civil No. _____

05 11173 NG

MAGISTRATE JUDGE Alexander

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
FOR 2255 MOTION TO VACATE, SET-ASIDE, OR
CORRECT SENTENCE.**

_____

COMES NOW, Antonio Santiago, hereinafter the petitioner, in Pro Se, in the above captioned cause and respectfully files this 28 U.S.C. § 2255 on the following grounds:

1)   Petitioner's sentence was illegally enhanced.

2)   Petitioner's sentence was imposed under an unconstit-utional mandatory sentencing regime.

## STATEMENT OF FACTS

In 1999, the Federal Bureau of Investigation initiated
an investigation of the Latin Gangsta Disciples, allegedly
a street gang operating out of Lawerance, Massachusetts. The
investigation began with intelligence gathered from law enfor-
cement sources. Then using a number of cooperating witnesses,
the FBI made controlled purchases of cocaine.

On 1/27/00, a nineteen count Sealed Indictment was returned
in U.S. District Court, District of Massachusetts, charging
petitioner with Conspiracy to Distribute Heroin, (count 1) in
violation of 21 U.S.C. §846, Distribution of Heroin and Aiding
and abetting, (count eight) in violation of 21 U.S.C. §841(a)
(1) and 18 U.S.C. §2, and Distribution of Heroin (count 11)
in violation of 21 U.S.C. §841(a)(1).

On 1/31/00, petitioner was arrested by FBI agents and app-
eared without counsel in U.S. District Court in Boston before
U.S. Magistrate Judge Robert B. Collings for an initial app-
earance. The defendant was ordered detained pending a detention
hearing.

On 8/24/00 a twenty-count Second Superseding Indictment
was returned by a Federal Grand Jury at Boston charging petit-
ioner with Conspiracy to Distribute Heroin, (count 1) in vio-

-2-

lation of 21 U.S.C. §846, Distribution of Heroin and Aiding
and Abetting (count eight) in violation of 21 U.S.C. §841(a)(1)
and 18 U.S.C. §2, and Distribution of Heroin (counts 11 and
20) in violation of 21 U.S.C. §841(a)(1).

On 6/4/01, the defendant appeared in the U.S. District
Court at Boston before the Honorable Nancy Gertner and entered
a plea of guilty to counts 1, 8, 11 and 20 of the second Super-
seding Indictment. The Court accepted the plea and disposition
is scheduled for February 28, 2002. There was no plea agree-
ment in this case.

On June 27, 2002 the Honorable Judge Gertner sentenced
petitioner to a term of 135 months after finding that petit-
ioner base offense level was 32, adjusted 4 points for role
in offense pursuant to 3B1.1(a), a 3 point downward adjustment
for acceptance of responsibility rendered a final offense level
of 3, criminal history I with a sentence exposure of 135-168
months.

The petitioner did not file a direct appeal, therefore
his conviction became final on July 7, 2002.

## THE NEW RULE ANALYSIS

In deciding whether a defendant is entitled to the benefit of a case handed down after his conviction became final may require a court to determine exactly when the principle embodied in the case became law; see **Bunkly v. Florida** 155 L.Ed 2d 1046 (2003). In **Teague v. Lane** 103 L.Ed 2d 334 (1998), the Supreme Court held that a new rule of law is a rule that didn't exist when one was convicted and was not dictated by precedent existing at the time conviction became final. In **Teague**, the petitioner who was African American had been convicted of murder by an all white jury in 1983. At his trial, the prosecutor had used peremptory challenges to keep all African Americans off the jury. Two and half years after the conviction became final, the Supreme Court ruled that a defendant can establish a prima facie case of racial group and that the prosecutor exercised peremptory challenges to remove jury members of that racial group; **Baston v. Kentucky** 90 L Ed 2d 69 (1986). The petitioner sought habeas relief asking the court to apply **Baston** to his trial. The Supreme Court ruled that the petitioner could not apply **Baston** because it was a "new rule of law" which was not dictated by any earlier cases.

A rule may still be new even if it is based on earlier cases; **Saffle v. Parks** 108 L Ed 2d 415. In **Saffle**, the petitioner sought habeas relief because at his trial, the judge has

-3-

instructed the jury to "avoid any influence of sympathy." The
petitioner argued that this instruction was unconstitutional
because it made the jury ignore evidence that mitigated the
petitioner's guilt. The appellate court reversed the district
court decision holding that the argument was not a new rule
of law because earlier cases had made a rule that the court
must ask the jury to listen to mitigating evidence. The Supreme
Court reversed and denied habeas relief. The  Supreme Court
held that the courts of appeal was making a new rule of law
even though it was based on earlier cases. The earlier cases
did not say how the court should ask the jury to listen mitigat-
ing evidence. The courts of appeals has made a new rule about
how the court should guide the jury in considering mitigating
evidence.

The Supreme Court in **Caldwell v. Mississippi** 86 L.Ed 2d
231 (1985) rule the **Caldwell** rule a new rule of law becasue
it was not predictated from earlier cases; such being that a
prosecutor may not make remarks that diminish the jury's sense
of responsibility for capital sentence decisions. In **Sawyer
v. Smith**, 111 L.Ed 2d 193 (1990), petitioner sought habeas
relief asking the court to apply the **Caldwell** rule to his con-
viction. Since petitioner Sawyer's conviction became final prior
to the Caldwell decision and such decision was rendered to be
a new rule; the **Caldwell** mandate was inapplicable to petitioner
and accordingly petitioner was denied relief.

-4-

The Supreme Court in **Caspari v. Bolen** 127 L.Ed 2d 236 (1994) applied **Teague v. Lane**, I.d., by explaining three steps the courts must take to see if the **Teague** rule applies. First, the habeas courts must find date to which the conviction became final. Second, it must decide whether the trial court would have discovered the rule on it's own, just by examining earlier cases. Third, if the rule is "new", meaning the trial court would not have discovered it from earlier cases, then the habeas court must decide if the defendant falls into one of the two exceptions of the **Teague** non-retroactivity principles. When a rule is considered a new rule of law the inquiry as to it's retroactive applicability is still subject to further scrcuntiny under th exceptions to the **Teague** rule of new laws. Under these exceptions petitioner can raise a new rule if it meet the standard of this specific rule. There are two situations when the aforementioned claim can be made:

1. New Laws prohibiting certain types of punishment.[1]

2. New Laws insuring fundamental fairness at trial.[2]

On June 25, 2004, the United States Court of Appeals for the 11th Circuit held that the rule in **Alabama v. Shelton** 152 L.Ed 2d 888 (2002)(that the Sixth Amendment guarantees assistance

---

[1] For example in Ford v. Wainwright, 91 L.Ed 2d 335 (1986), the Supreme Court prohibited States from imposing the death penalty on defendants who are insane. In Coker v. Georgia, the Supreme Court prevented States from imposing the death penalty for conviction of rape.

[2] To fit into this exception, a new rule would involve a bedrock procedural element as in Gideon v. Wainwright rule that the state must appoint counsel for poor defendants.

of counsel in which a suspended sentence is imposed) may be applied retroactively on collateral review in accordance with **Teague**, **I.d.** The right recognized in **Shelton** falls within the narrow exception to the **Teague** doctrine as described above in exception number 2 of general prohibition on general application of new rules. Such a rule is an extension of the Sixth Amendment right to counsel recognized in **Gideon v. Wainwright** 9 L.Ed 2d 799 (1963); "the paradigm of bedrock procedural element falling within the exceptions".

In the instant case, the petitioner was sentenced on June 27, 2002 to a term of 135 months imprisonment. The petitioner did not file a direct appeal with the appellate court, therefore petitioner conviction became final on July 7, 2002.

Examination of the "Legal landscape" as it existed on July 2, 2002 to determine whether the result on **Blakely** was dictated by existing precedent(s). **Graham v. Collins** 122 L.Ed 2d 260 (1993). "Subject to two exceptions a case decided after a petitioner's conviction and sentence became final may not be the predicate for Federal Habeas Corpus relief unless the decision was dictated precedent existing when the judgment in question became final." **Stringer v. Black** 177 L.Ed 2d 367 at 376; See **Butler v. McKeller** 108 L.Ed 2d 347 (1990); **Penry v. Lynaugh** 106 L. Ed 2d 256 (1989); **Teague v. Lane** 103 L. Ed 2d 334 (1989). On June 27, 2000, the Supreme Court handed down the decision in **Apprendi v. New Jersey** 147 L. Ed 2d 435, which held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." On June 24, 2004, the Supreme Court ruled in **Blakely v. Washington** 159 L. Ed 2d 403 that "**Blakely** clarified the statutory maximum" for **Apprendi** purposes is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional findings." On Januarary 12, 2005, the United States Supreme Court decided **Booker/Fanfan** 2005 U.S. Lexis 628 (1/12/05), which held that Blakely

applies to the Federal Sentencing Guidelines. The government
in those cases asked the Court whether the "Apprendi line of
cases applies to the Sentencing Guidelines." The **Blakely** de-
cision is governed by **Apprendi** which was law in existence
years prior to petitioner's conviction becoming final.

This court must consider the language that was utilized
in the **Blakely** opinion. In particular the majority expressed:

> "The state nevertheless contends that there
> was no Apprendi violation because the relevant
> "statutory maximum" is not 53 months, but 10
> year maximum for class B felonies in 9A.20.021
> (1)(b). Our precedents make clear however, that
> the statutory maximum for Apprendi purposes is
> the maximum sentence a judge may impose solely
> on the basis of the facts reflected in the jury
> verdict or admitted by defendant. See Ring at
> 602 ("the maximum he would receive if punished
> according to the facts reflected in the jury
> verdict alone" quoting Apprendi, supra at 483)):
> Haris v. U.S. 526 U.S. 545, 563 (2002) (plur-
> ality opinion) (same); cf. Apprendi, supra at 488
> (facts admitted by the defendant) I.d. at 413.
>
> Our commitment to Apprendi in this context re-
> flects not just respect for longstanding pre-
> cedent, but the need to give intelligible con-
> tent to the right of jury trial. That right is
> no mere procedural formality, but a fundamental
> reservation of power in our constitutional str-
> ucture, I.d at 415.

The Word commitment as used by the majority denotes: an agree-
ment to do something in the future. (Black's Law, 8th Edition)
(1999). Examination of Rogerts II Theasures, expanded edition

-8-

1988 identifies the word Duty as one of he synonyms for the word commitment. Duty is further defined as: an act or course of action that is demanded (required) of one as by position, custom or law or religion. (Rogerts II theasures, Expanded Edition). Since one of the essential questions is ascertaining the status of a rule, is whether the rule was dictated by existing precedent(s), then it would serve well to scruntinize the meaning of the word dictate. The word dictate as used in the controlling Teague doctrine of retroactivity means: to order, to command (require) authority. Black's Law 8th Edition 1999). Therefore it can be said that when one is ordered, commanded, required or Dictated, such person has a required duty or commitment by law to comply accordingly to the underlying governing principle(s) that form the foundation of the express authority. A thorough examination of the decision rendered by the Blakely I.d. court would support the finding that the majority was compelled by the precedent set forth in Apprendi, I.d. See Blakley I.d.;

> "This case requires us to apply the rule we expressed in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." I.d. at 412."

> "Apprendi carries out this design by ensuring that the judge's authority to sentence derives wholly from the jury's verdict. Without that re-

-9-

striction, the jury would not exercise the con-
trol that the framers intended. The reason the
framers put a jury trial guarantee in the con-
stitution is that they were unwilling to trust
government to mark out the role of the jury."
I.d. at 415.

"When defendant pleads guilty, the state is free
to seek judicial sentence enhancements, so long
as the defendant either stipulates to the rel-
evant facts or consents to judicial fact finding.
See Apprendi 530 U.S. 488; I.d. at 417-418."

"There is not one shred of doubt however, about
the framers paradigm for criminal justice. Not
the civil law ideal of administrative perfection
but the common state law ideal of limited state power
accomplished by strict division of authority
between judge and jury. As Apprendi held,
every defendant has the right to insist that
the prosecutor prove to a jury all facts leg-
ally essential to the punishment. I.d. at 419-
420."

"The court makes clear that it means what it said
in Apprendi v. New Jersey, 530 U.S. 466 (2000).
In its view the Sixth Amendment says that "any
fact that increases the penalty for crime beyond
the prescribed statutory maximum must be submitted
to a jury (quoting Apprendi, supra at 490) pre-
scribed statutory maximum" means the penalty that
the relevant statute authorizes "solely on the basis
of the facts reflected in the jury verdict."
Justice Breyer dissenting opinion I.d. at 429.

Perhaps the most significant quote in the **Blakely** decision re-
garding the status of the **Blakely** rule comes from Justice O'
Connor who previously in **Teague**, in her plurality opinion set
forth the governing rule in the **Teague** doctrine of retroactivity.
Since the **Teague** doctrine is the controlling authority in this
matter, and Justice O'Connor was instrumental in articulating
its prescribed authority then this court must consider Justice

-10-

O'Connor's warning in her dissenting opinion in **Blakely**, re-
garding the ramifications of the far reaching effect of the
**Blakely** ruling on convictions that became final after the **App-
rendi** ruling.

> "The consequences of today's decision will be
> as far reaching as they are disturbing. Washing-
> ton's sentencing system is by no means unique.
> Numerous other States have enacted guidelines
> systems, as has the Federal Government. See, e.g.,
> Alaska Stat. § 12.55.155 (2003); Ark. Code Ann.
> § 16-90-804 (Supp 2003); Fla. Stat. § 921.
> 0016 (2003); Kan. Stat. Ann. § 21-4701 et seq.
> (2003); Mich. Comp. Laws Ann. § 769.34 (West
> Supp. 2004); Minn. Stat. § 244.10 (2002); N.C.
> Gen. Stat. § 15A-1340.16 (Lexis 2003); Ore.
> Amn. Rule § 213-008-0001 (2003); 204 Pa. Code
> § 303 et seq. (2004), reproduced following 42
> Pa. Cons. Stat. Ann. § 9721 (Purden Supp. 2004);
> 18 USC § 3553 [18 USCA § 3553]; 28 USC § 991 et
> seq. [28 USCA §§ 991 et seq.]. Today's decision
> casts constitutional doubt over them all and, in
> so doing, threatens an untold number of criminal
> judgments. Every sentence imposed under such
> guidelines in cases currently pending on direct
> appeal is in jeopardy. And, despite the fact
> that we hold in Schriro v. Summerlin, 542 US____,
> 159 L Ed 2d____, 124 S Ct____, that Ring (and a
> fortiori Apprendi) does not apply retroactively
> on habeas review, all criminal sentence imposed
> under the federal and state guidelines since
> Apprendi was decided in 2000 arguably remain open
> to collateral attack. See Teague v. Lane, 489 US
> 288, 301, 103 L Ed 2d 334, 109 S Ct 1060 (1989)
> (plurality opinion) ("[A] case announces a new
> rule if the result was not dictated by precedent
> existing at the time the defendant's conviction
> became final").[3] **Blakely**, I.d. at 426.

---

[3] The numbers available from the federal system alone are staggering. On March 31, 2004, there were 8,320 federal criminal appeals pending in which the defendnat's sentence was at issue. Memorandum from Carl Schlesinger, Administrative Office of the United States Courts, to Supreme Court Library (June 1, 2004)(available in Clerk of the Court's case file). Between June 27, 2000, when Apprendi was decided and March

In addition in the early post **Blakely** era, other courts have
indicated that **Blakely** is dictated by Apprendi: See **U.S. v.
Shamblin** 323 F.Supp 2d 757 (2004):

> "Shamblin has benefited again from the Supreme
> Court Apprendi decision as further explained in
> Blakely" I.d. at 759.
>
> "Blakely or Apprendi properly construed would
> have affected Shamblin's sentence" I.d. at 762.
>
> "Thus the rule of Apprendi as explained in Ring
> and now Blakely, establishes that any fact "leg-
> ally essential to the punishment must be proven
> beyond a reasonable doubt to a jury or admitted
> by defendant" I.d. at 763.
>
> "The Blakely decision is based on law in exist-
> ence at the time of defendant's sentence as noted
> by the Supreme Court, the decision flowed natur-
> ally from Aprendi and its progeny" I.d. at 768.

And although the lower courts had misinterpret the mandate in
Apprendi, the era just prior to Blakely began to properly inter-
pret the legal percepts outlined in the Apprendi ruling. Indic-
ative of this is the reasoning of the Honorable William Young,
District Chief Judge of the District of Massachusetts who wrote
a sentencing memorandum prior to Blakely, covering four defen-
dant's in which he suggested that in light of Apprendi the cur-
rent guidelines taken as a whole violate the constitution.

> "This court holds the guideline system vio-
> lates the constitutional rules announced in App-
> rendi and Ring".

---

³ 31, 2004, there have been 272, 191 defendants sentenced in federal court. Memorandum,
supra. Given that nearly all federal sentences are governed by the Federal Sentencing
Guidelines, the vast majority of these cases are Guideline cases.

-12-

"The conflict between the guidelines and the man-
date of Apprendi and Ring first came to this
court's attention when it encountered a Feb. 2004
note in Harvard Law Review on the subject. (See
unconstitutionality of determinate sentencing).
The court was at the point nearly ready to issue
its sentencing opinion in two of these cases, and
the sentencing hearings in all of them had occur-
red some time before that. That court re-examined
the relevant precedent, and it became increasingly
clear that the court could not "conscientiously
and with due regard to duty and official oath de-
cline the responsibility to apply Apprendi and
Ring in its sentencing analysis."

"In Ring, the Supreme Court explicitedly stated
that death, not life imprisonment was the pre-
scribed statutory maximum sentence, yet that
did not excuse Arizona from proving the facts
necessary to impose the death sentence to a jury
beyond a reasonable doubt. Thus Apprendi and
Ring require a court to determine the practical
effect of a legal regime: if the finding of a
fact increases the maximum punishment that a
judge can impose by law, that fact must be pro-
ved to a jury beyond a reasonable doubt, re-
gardless of what any statue defines as the max-
imum punsihment."

In **Booker/Fanfan**, the majority's opinion continues to place
great emphasis on the origins of the Blakely decision. "Our
precedents, we explained and make clear "that the statutory
maximum for Apprendi purposes is the maximum sentence a judge
may impose solely on the basis of the facts reflected in the
jury verdict or admitted by the defendant.

> Accordingly, we affirm our holding in Apprendi
> and fact (other than a prior conviction) which is
> necessary to support a sentencing exceeding the

> the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.
>
> Justice Breyer, with whom the Chief Justice, Justice O'Connor, and Justice Kennedy join dissenting opinions. The court today applies it's decision in Apprendi v. New Jersey and Blakely v. Washington.
>
> The court's substantive holding rests upon its decisions in Apprendi, Blakely.

The **Blakely** court applied the overreaching principle articulated in **Apprendi** of which compliance with the Sixth Amendment requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" must be proved beyond a reasonable doubt. The procedural aspect of this rule that every element of a crime must be submitted to the jury and proved beyond a reasonable doubt did not originate with **Apprendi**, as it has been imbeded in the American Constitutional law for more then two hundred years; see **Apprendi**. However **Apprendi** addressed the novel issue of whether once a jury finds guilt of an underlying offense, additional facts that determine the defendant's maximum statutory sentence can be left for the judge to decide by a preponderance of evidence or whether they too are elements of the crime to be determined b the jury beyond a reasonable doubt. For example, prior to Apprendi every federal circuit court held that in 21 U.S.C. § 841 prosecutions, the quantity of drugs was a sentencing factor which prosecutors were not required to charge in the indictment, submit to a

-14-

jury, or prove beyond a reasonable doubt. Since **Apprendi**, every
federal circuit court to consider the question has reversed
course, holding that in such prosecutions the quantity of drugs
must be charged in the indictment, submitted to a jury, and
proven beyond a reasonable doubt. **Apprendi's** innovation was
not identifying the procedures that apply to an element of
a crime but rather redefining what constitutes an element
of a crime. The **Blakely** decision preserves the deeply implanted
proposition in our constitutional jurisprudence; See **Blakely**,
"this case requires us to apply the rule we expressed in **App-
rendi v. New Jersey**, other then the fact of a prior conviction
any fact that increases the penalty for a crime beyond the
prescribed statutory maximum must be submitted to a jury and
proven beyond a reasonable doubt; See **U.S. v. Guadin** 132 L
Ed 2d 444 (1995), "these rights indisputably entitle a criminal
defendant to a jury determination that he is guilty of every
element of the crime with which he is charged, beyond a reason-
able doubt." See **Re Winship** 25 L Ed 2d 368 (1970) "the due
process clause protects the accused against convictions except
upon proof beyond a reasonable doubt of every fact necessary
to constitute the crime with which he is charged." The **Blakely**
decision was clearly dictated by **Apprendi**, the constitutional

-15-

standard that prevailed at the time of the original proceed-
ing and therefore not a new rule. Petitioner reliance on **Blakely**
is proper since the rule in **Apprendi** has announced    years ago
prior to petitioner's conviction becoming final. See **Penry v.**
**Lynaugh** 106 L Ed 2d 256 (1989). Although the rule announced
in **Griffith v. Kentucky** was after petitioner's conviction became
final, such rule was applicable to petitioner for the rule
announced was dictated by the prior Supreme Court ruling that
were decided prior to petitioner's conviction becoming final.
See **Stringer v. Black** 117 L Ed 2d 367 (1992), in which it was
held that a Habeas Corpus petitioner whose death sentence became
final in 1985 was entitled in seeking to avoid the death sent-
ence, to rely on a 1998 Supreme Court decision and a 1990 Sup-
reme Court decision, as neither of these decisions concerning
the validity of death sentence announced a new rule. See **Bunkly**
**v. Florida** 155 L Ed 2d 1046 (2003), the petitioner conviction
and life sentence became final with affirmance by a Florida
Appellate Court in 1989. Almost a decade later the State High
Court held a ruling in a case that was pertinent to petitioner's
claim. Petitioner then sought post conviction relief but the
Florida Supreme Court held that the case petitioner relied on
did not apply retroactively. The Supreme Court in a per curiam
opinion held that petitioner Bunkly was entitled to benefit
from a case handed down after his conviction became final since
the principle embodied in the case became law prior to his con-

-16-

viction becoming final. The rule in **Blakely** does not invalidate **Apprendi**; "there can be no dispute that a decision announces a new rule if it explicitly overrules a prior decision, however it it more difficult to discern the novelty of rule when a decision merely extends the reasoning of prior cases" **Graham v. Collins** 122 L Ed 2d 260.

It is anticipated that the government in its opposition to the retroactively of the **Blakely** decision would advocate that the holding by the Supreme Court in **Schriro v. Summerlin** 159 L Ed 2d 442 (2004)(stating that the holding of Ring v. Arizona, a case which reinforces the approved requirement that a jury find any aggravating facts that lead to a greater sentence, is properly classified as procedural and therefore does not apply retroactively to a case already final on direct review) is directly applicable to **Blakely** since the **Summerlin** court took into account that the decision in **Ring v. Arizona** 153 L Ed 2d 566 (2002) (requiring that aggravating factors necessary for the death penalty be found by jury) applied the **Apprendi** principle (any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt), however there is a vital, noteworthy distinction from the circumstances in defendant Summerlin's claim and that of petitioner in the present case at bar. Defendant Summerlin did not allege that **Ring** was not a new rule. Such

claim would have had to been supported with allegations that
the dictates in **Apprendi** governed the decision in **Ring**. This
position in turn would have been futile under defendant Summer-
lin's circumstances for the Supreme Court handed down Apprendi
on June 27, 2000, 17 years after petitioner Summerlin's convict-
ion became final. Summerlin **I.d.** at 447; (Summerlin's con-
viction became final in 1983). Instead the question before the
Summerlin Court was whether the rule announced in **Ring** was a
substantive rule or a watershed rule of criminal proceeding
which if so would be deemed retroactive in its application.
In the instant case at bar. petitioner claim is that **Blakely**
is not a new rule but one that was dictated by **Apprendi** as
formerly stated. The courts inquiry is imperative since **Apprendi**
was decided 3 years prior to petitioner's conviction becoming
final. Therefore petitioner's claim meets the initial criteria
to consider further whether **Blakely** was indeed dictated by
**Apprendi**. While defendant Summerlin would fail from the onset.
Schriro v. Summerlin does not conclusively foreclose retroact-
ivity application of **Blakely**.

It is manifestly consistent that the **Blakley** decision
explicitly refers to **Apprendi** as the existing precedent, upon
which the Blakely court made its findings. What **Blakely** did
under the **Apprendi** precedent was shed light on the maximum
sentence for Apprendi purposes, holding that such a sentence

-18-

is established solely on the basis of facts reflected in the jury verdict or admitted by the defendant. In other words "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. The Blakely rule pays homage to Apprendi, for Apprendi is the foundation from which the decision in Blakely was constructed. Thus it can be said that a federal court in   May 3, 2004      would have acted "objectively unreasonable by not extending the relief later sought in federal court" **Odell v. Netherland** 138 L Ed 2d 351 (1997). **I.d.** at 357. Petitioner anticipates that this court would profoundly consider the origins of the **Blakely** rule since "the Supreme Court said that the purpose of Federal Habeas Corpus is to insure that convictions comply with federal law in existence at the time a conviction became final" 122 L Ed 2d 837 Sentencing Decision Retroactivity Annotations. The rules in **Blakely** does not invalidate **Apprendi** "there can be no dispute that a decision announces a new rule if it explicitly over-rules a prior decision" **Graham v. Collins** 122 L Ed 2d 260. The Apprendi doctrine is controlling, therefore this court can entertain petitioner's claim.

In the alternative if this court deems this rule a "New" rule then petitioner argues that the Blakely rule constitutes

-19-

a procedural rule that is worthy of recognition under the "water-
shed" rule exception acknowledged in the Teague doctrine (#2
of the previously cited exceptions) watershed rules of criminal
procedures implicate the fundamental fairness of the criminal
proceeding. **Apprendi** may have been the harbinger for the demise
of the validity of Judge imposed sentence enhancements while
**Blakely** arrived to enforce its intrinsic mandates which insure
that an accurate conviction is obtained. The origins of the
rule declared in **Blakely** although explicitly favor **Apprendi**
upon further scrutiny can be traced back to as early as **Re
Winship**. Winship expressly held that the reasonable doubt stand-
ard "is a prime instrument for reducing the risk of convictions
resting on factual error. The standard provides concrete sub-
stances for the presumption of innocence that bedrock axiomatic
and elementary principle whose enforcement lies at the found-
ation of administration of our criminal law. . . . Due Process
commands that no man shall lose liberty unless the government
has bourne the burden of . . . convincing fact finder of his
guilt. To this end, the reasonable doubt standard is indesp-
ensable, for it impresses on the trier of fact necessity of
reaching a subjective state of certitude of the facts in issue."
**Re Winship** 25 L Ed 2d 368 (1970), the rule promotes both acc-
uracy and fairness. **Re Winship** supra. The rule announced in
**Re Winship** was given retroactive effect because it was to
overcome an aspect of the criminal trial that substantially

-20-

impairs its truth finding function and so raised serious quest-
ions about the accuracy of guilty verdicts. The Supreme Court
holding in **Tyler v. Cain** 150 L Ed 2d 632 lends support to the
conclusion that all extensions of Winship are automatically
retroactive. The question of whether a newly announced const-
itutional rule will apply retroactively on collateral review
is a relatively recent inquiry in American Jurisprudence. **Sum-**
**merlin v. Stewart** 341 F.3rd 1082 (2003). As Justice Holmes ob-
served at the turn of the century. "judicial decisions have
had retrospective operation for a thousand years" **Kuhn v. Fair-**
**mont Coal Co.** 54 L Ed 228 (1910) Justice Holmes J. Dissenting.

The Teague doctrine represents the Supreme Court effort
to find equality between finality of judgment and certainty
of results. In furtherance of the goals of deterence which are
finality, **Teague** made new law inapplicable on collateral
review. The interest of finality, however must give way where
as in this case, the nature of the constitutional error is one
that no one can have confidence in the outcome produced by the
procedure at issue. "The reasonable doubt standard repre-
sents a social calculus between the relative consequences of
unjust conviction and incorrect acquittal". **Re Winship** supra.
Under the Teague doctrine the focus on the accuracy of the
proceeding generally is understood to mean accuracy in deter-
mining innocence or guilt. **Graham v. Collins** 122 L Ed 2d 260
(1993). However as the U.S. Supreme Court has stated, penalty

-21-

phase proceeding also "have hallmarks of the trial on guilt or innocence." **Sattazattn v. Pennsylvania** 154 L Ed 2d 558 at 592 quoting **Bullington v. Missouri** 68 L Ed 2d 270.

The impression prior to **Blakely** was that requiring the jury to make determinations such as drug quantities, beyond a reasonable doubt will not greatly affect the accuracy of convictions. The unanimous view was that most sentences would not be affected by **Apprendi** because they fall within the statutory maximum (20 years maximum for any measurable amount of drugs), which even where there is no finding of a particular drug quantity, a sentence of 20 years or less would not violate Apprendi; normally the judge would make a drug quantity finding and could then set the sentence without violating **Apprendi** as long as the sentence did not exceed the maximum. Therefore it was held that sending drug quantities determination to the jury can not be fundamental to the fairness of the proceeding. However some courts began to realize that this procedure was unacceptable departure from the jury traditions that it is indespendable part of criminal proceeding. See **U.S. v. Swinton** 333 F.3rd 481 (2003) "the prosecution has never presented proof to a jury beyond a reasonable doubt standard that Swinton was guilty of distributing the type of drug and quantity by which his sentence was enhanced. Imposing an additional twenty years of confinement without having the facts pertaining to sentencing

enhancments submitted to a jury for fact finding beyond a reasonable doubt, as required by **Apprendi** constitutes a miscarriaye of justice that trumps the judicial preferences of finality".

The **Blakely** rule defines the decisive maximum; "the relevant statutory maximum for **Apprendi** purposes is the maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by defendant. "**Blakely** supra. This is imperative for now unlike **Apprendi** the elements of the offense such as drug quantities must be charged in the indictment and proven to a jury beyond a reasonable doubt or admitted by the defendant no matter what the drug quantities are, for the prescribed maximum is contingent upon this fact. In **Blakely** the defendant was convicted of a felony that carried a statutory maximum of ten years, however pursuant to stipulations in plea agreement he was exposed to a sentencing range of 49 to 53 months, the sentencing court sentenced petitioner to a 90 month sentence. The Supreme Court held that the maximum sentence the sentencing court could impose was 53 months based on the facts defendant admitted. The absence of the **Blakely** rule protection necessarily constitutes an error that deprives a defendant of a fundamental right. The rule ensures that an accurate conviction is obtained. Defendant have a fair notice of the charge and reasonably determine what their sentence exposure would be on the basis of the charges; compare;

-23-

See **Re Winship** supra, the rule promotes both accuracy and fairness; See **Sullivan v. Louisiana** 124 L Ed 2d 182 (1993), "A constitutionally deficient jury instruction on a criminal case as to the defendant of reasonable doubt for purposes of the prosecutions burden of providing guilt beyond a reasonable doubt was not amenable to harmless error analysis on appeal and would always invalidate a conviction". In the instant matter, the petitioner admitted certain criminal conduct via a plea agreement however he is innocent of the enhanced criminal conduct determined at sentencing of which he never admitted. This court is now confronted with a rare instance where the interest in certainty is so clearly implicated by the 6th Amendment right to a jury trial that the court's interest in finality must be subordinated. "The scope of this exception of the **Teague** doctrine has been "described as a difficult question" unaided by the relatively sparse guidance" of the Supreme Court. **Gaines v. Kelly** 202 F.3rd 598 at 604 (2nd Cir. 2000). However despite the ambiguity over the definition of watershed rules, the courts have applied the exceptions to a range of constitutional rules of criminal procedures.

Upon close examination, the actual impact of the procedural change dictated by **Apprendi** provides further support for the finding that the **Blakely** rule enhances the accuracy of

the determination of guilty. The bedrock procedural element
at issue is the constitutional provision of the Sixth Amendment
right to a jury trial. To neglect the true significance of this
criminal procedure which merits no other recognition then a
"watershed rule" of criminal procedure is an unacceptable de-
parture from the Supreme Court standards. The rule announced
in **Blakely**, like other watershed rules is designed to reduce
significantly the risk of an erroneous verdict or admission's
of guilt. Thus such rule defines constitutional safeguards that
are essential to protect the fundamental fairness of the
judicial process.

Petitioner pray that this court carefully examine the
merits of this claim for the Supreme Court has acknowledge
"that the precise contours of this exception may be difficult
to discern"; **Saffle v. Parks** 108 L Ed 2d 415. However the Fed-
eral Constitutional infirmities are no longer cloaked in com-
plete obscurity but have unequivocally emerged from it's fog
for all to see what was always there yet undetectable among
so many. With this in mind it is imperative that the court re-
flect upon the true significance of **Blakely** and what it means
today; consider **Teague v. Lane** I.d., 357, quoting from **Mackey v. U.S.**
28 L Ed 2d 404 (1971), "In some situation it might be that time
and growth in social capacity, as well as judicial perceptions
of what we can rightly demand of the adjudicatory process, will

-25-

properly alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction." This court must bear in mind that the principle function of habeas corpus is to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted." **Bousley v. U.S.** 140 L Ed 2d 828 at 838. When a defendant asserts that he is guilty of a particular conduct, he is actually innocent of a greater or less serious offense. A sentence enhancment which make the criminal conduct more serious creates the troubling possibility that the defendant has been convicted of conduct that constitutes a less serious offense then the one he was sentenced to. The degree of culpability the legislative associates with factually distinct conduct has significantly implications both for a defendant(s) liberty and the heighten stigma associated with an offense the legislative has selected worthy as greater punishment.

-26-

## PETITIONER'S SENTENCE WAS ILLEGALLY ENHANCED

Petitioner was sentenced to a term of 135 months in excess of the facts admitted. The sentence violated the Sixth Amendment. The sentence should be vacated and the case remanded for re-sentencing. See **U.S. v. Booker** 160 L Ed 2d 621 (2005); **U.S v. Huges** 396 F3rd 374 (4th Cir. 2005); **U.S. v. Milan** 398 F3rd 445 (6th Cir 2005); **U.S. v. Ameline** 400 F3d 646 (9th Cir. 2005); Under **Booker**, "judicial fact-finding that increases the maximum lawful penalty, if required by the guidelines is prohibited." **U.S. v. Crosby** 397 F3d 103 (2nd Cir. 2005).

After concluding that the guidelines were unconstitutional because they authorized punishment on facts not found by a jury beyond a reasonable doubt or admitted by a defendant. The Court crafted a remedial scheme to save the act as a whole, the court "severed and excised" two sections: 18 USC § 3553(b)(1) and § 3742(e). Booker **Id.** Since those sections "mandated sentencing and appellate review in accordance with the guidelines", their removal from the Sentencing Reform Act "rendered the guidelines effectively advisory." **U.S. v. Hughes** 396 F3d 374 (4th Cir. 2005).

In this case at bar, the petitioner's sentence was enhanced based upon facts found by the judge by a preponderance of the evidence. Petitioner plead guilty pursuant to a straight

-27-

plea. During the allocation of guilt, petitioner's admission entailed the conduct in counts 1, 8, 11, 20 which contained no drug quantities. At sentencing, the sentencing judge determined by a preponderance of evidence that the petitioner base offense level was 32 pursuant to 2D1.1(4), that the petitioner occupied a leadership role and therefore, 4 point enhancement was aplicable under 3B1.1(a). On the basis of these additional facts, and the resulting enhancements, the petitioner was sentenced to a term of 135 months which is 123 months[1] over the permissible statutory maximum. Had petitioner been sentenced in accordance to the admitted conduct, his sentence exposure would have been 12 months. The Supreme Court noted, as in **Blakely**, the petitioner sentence was improper because it was not authorized by the jury verdict, but by additional facts found by the judge at sentencing. **U.S. v. Booker** 160 L Ed 2d 621.

Circuit Courts applying Booker have found error when sentences were imposed beyond the maximum authorized facts not authorized by the jury verdict or admitted by the defendant. The eror results from the combination of judge found facts (beyond those authorized by a jury verdict or admitted by the defendant) that support enhancements resulting in mandatorily

---

[1] Since petitioner did not admit drug quantity then the appropriate base offense level in accordance to U.S.S.G. section 2D1.1(14) for less than 5 grams of Heroin; less than 25 grams of cocaine is 12. Base offense level 12 is further reduced 2 levels for acceptance of responsibility rendering a final Base Offense Level of 10 consisting of a sentencing exposure of 6-12 months.

imposed guideline range increases and correspondingly longer
sentences. **U.S. v. Hughes** 396 F.3d 374 (4th Cir. 2005) (impo-
sition of a sentence based in part on facts found by the dis-
trict judge, above the maximum authorized by the facts found
by the jury violated the Sixth Amendment). **U.S. v. Oliver** 397
F.3d 369 (6th Cir. 2005) (Sixth Amendment violated sentence
by twelve months longer than the guideline maximum that would
have applied in the absence of facts found by district judge
not authorized by jury verdict); **U.S. v. Milan** 398 F3rd 445
(6th Cir. 2005) (imposition of sentence including enhancements
resting on facts found by judge, and not admitted to by the
defendant in the course of pleading guilty violated the Sixth
Amendment). **U.S. v. Ameline** 400 F3rd 646 (9th Cir. 2005) (Sixth
Amendment violated by judicial fact-findings of drug quantity
and firearm possession that increased offense level and resulted
in sentence that exceeded the maximum sentence that could have
been imposed based only on the basis of facts admitted by the
defendant in his guilty plea).

The enhancement in the instant case, based on judicial
fact-finding increased the offense level and the mandatory
sentencing range in violation of petitioner's Sixth Amendment
Right. The sentence imposed by this court was unconstitutional.
The constitutional infirmities can no longer be ignored.

-29-

## PETITIONER WAS SENTENCED UNDER AN UNCONSTITUTIONAL MANDATORY SENT- ENCE REGIME.

Even assuming that there was no Sixth Amendment violation below (judicial fact-finding), the District Court erred by treating the sentencing guidelines as mandatory and by failing to consider the sentencing factors in 18 U.S.C. § 3553(a). **Booker** makes clear that the guidelines are "effectively ad-visory" even in cases which no Sixth Amendment violation has occurred, the district court's treatment of the guidelines as mandatory, renders its sentence erroneous under Booker.

The **Booker/Fanfan** decision drastically changed the legal landscape. The remedial aspect of the decision brought a slew of factors that judges must now take a closer look at when sentencing a defendant. See subsection (a) of Title 18 U.S.C. § 353: The nature and circumstances of the offense, and history and characteristics of the defendant; the seriousness of the offense; the need to promote respect for the law; and provide just punishment; the need to provide educational or vocational training; medical or other correctional treatment. Previously prohibited sentencing factors now must be considered at sent-encing. There is a litany of formerly prohibited or discourged bases for departures that could now be considered for the § 3553(a) analysis: sentencing discrepancies among districts, See **United States v. Banuelos Rodriguez** 215 F.3d 969, 973 (9th

-30-

Cir. 2000) (The sentencing disparity at issue here results from
policy choices made by different United States Attorneys in
their respective districts.); See **United States v. Galvez Bar-
rios** 355 F.Supp. 2d 958 (E.D. Wis. Feb. 2, 2005)(in illegal
reentry case, 8 U.S.C. § 1326, where guideline range was 41-
51 months, imposing sentence of 24 months after consideration
of history of U.S.S.G. § 2L1.2 and unwarranted disparity in
sentences among § 1326 defendants, among other factors); See
sentencing disparities among districts, **United States v. Synder**
136 F.3d 65 (1st. Cir. 1998) (holding greater federal punish-
ment for ACCA defendant, when compared to state sentencing ex-
posure, was not basis for downward departure.); extraordinary
or super acceptance of responsibility, see **United States v.
Brown** 985 F.2d 478, 482-83 (9th Cir. 1993) (The mere exist-
ence of section 3E1.1(a) does not preclude the sentencing court
from making an additional departure in the case where defen-
dant manifests an extraordinary acceptance of responsibility).
The facts surrounding the instant matter require further scr-
utiny. See, **U.S. v. Jones** (D.Me. 2005), 352 F.Supp. 2d 22,
although sentencing guidelines did not authorize downward de-
parture, sentence that achieved such results was warranted.
Pursuant to 18 USC 3553 factors; **U.S. v. Oliver** 397 F.3d 369,
380 n.3 "Several Courts of Appeals have emphasized the diff-
iculty of speculating about what a district-court judge would
have done differently under an advisory guidelines regime. The

-31-

Fourth Circuit admitted that: "we simply do not know how the district court would have sentenced Huges had it been operating under the regime established by Booker". U.S. v. Hughes, 396 F.3rd 374, 381 n.8 (4th Cir. 2005). Similarly, the Sixth Circuit wrote that "even if we conclude that the evidence is over-whelming and essentially uncontroverted we cannot know the length of imprisonment that the district court judge would have imposed pursuant to this evidence following Booker."

Furthermore, the government moved the court to depart up-ward under U.S.S.G. 4A1.3 which the sentencing court declined to do, commenting that such would be a substantial increase in punishment that was not warranted. The court instead sent-enced the petitioner to the low end of the guideline. Under this premise there is a reasonable probability that the sent-encing court would have sentenced petitioner to a lower sent-ence. In sum, there is ample reason to believe that the district court would have imposed a lower sentence had it applied the methodolgy of Booker in this case. Although the sentencing court did not find any circumstances that warrant a departure, it could certainly find these facts sufficient to justify a sent-ence lower than 46 months in the exercise of its discretion under section 3553(a). The court should re-sentence in light of Booker.

## CONCLUSION

WHEREFORE PREMISE considered petitioner prays that this court vacate his sentence and order a remand to sentence petitioner in accordance to the holding in Booker.

Dated 6|1|05

Respectfully Submitted,

Antonio Santiago

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF MASSACHUSETTS**

UNITED STATES OF AMERCIA )
                         )
                         )
            VS.          )      Crim. No. 1:00cr10029-NG
                         )      Civil No. _____
                         )
ANTONIO SANTIAGO         )
                         )

### PRO SE CERTIFICATE OF SERVICE

I, Antonio Santiago, Petitioner herein, do hereby certify that an original and two copies of the foregoing filing has been furnished upon the Office of Clerk for the United States District of Massachusetts:

            Clerk of the Court
            John Joseph Moakley U.S. Courthouse
            1 Courthouse Way
            Boston, MA 02210

And a true and correct copy has been furnished upon the Office of the United States Attorney for the District of Massachusetts:

            Assistant United States Attorney
            1 Courthouse Way
            U.S. Courthouse, suite 9200
            Boston, MA 02210

I declare under penalty of perjury that the foregoing is true and correct. Executed on this day June 1, 2005

                        Antonio Santiago
                        Antonio Santiago